**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, | No. 14-35786 |
| *Plaintiff-Appellant*, | |
| | D.C. No. 9:13-cv-00199-DLC |
| v. | |
| PAUL BRADFORD, Kootenai National Forest Supervisor; FAYE KRUEGER, Regional Forester of Region One of the U.S. Forest Service; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture; U.S. FISH AND WILDLIFE SERVICE, an agency of the U.S. Department of Interior, | OPINION |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief Judge, Presiding

Argued and Submitted October 7, 2016
Seattle, Washington

Filed May 17, 2017

Before:  William A. Fletcher, Raymond C. Fisher,
and N. Randy Smith, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Environmental Law

The panel affirmed the district court's judgment in favor of federal officials and agencies in an action brought by Alliance for the Wild Rockies under federal environmental laws seeking to enjoin the U.S. Forest Service from constructing 4.7 miles of new roads in connection with a Forest Service project in the Kootenai National Forest.

In 2011, the Kootenai National Forest Plan was amended by the Forest Plan Amendments for Motorized Access Management within the Selkirk and Cabinet-Yaak Grizzly Bear Recovery Zones ("Access Amendments").  Standard II(B) of the Access Amendments prohibited any net permanent increase in certain permanent roads.

The panel held that the 4.7 miles of roads at issue would not violate the Kootenai National Forest Plan because they would be blocked to prevent motorized access upon completion of the Pilgrim Creek Timber Sale Project.  The panel held that it was not arbitrary and capricious for the Forest Service to conclude that roads closed to motorized

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

access by berms or barriers do not count toward "linear miles of total roads" under Standard II(B) of the Access Amendments.

The panel concluded that because the Forest Service's interpretation of its own Forest Plan was reasonable, Alliance for the Wild Rockies could not prevail on its National Forest Management Act, Endangered Species Act, and National Environmental Policy Act claims.

## COUNSEL

Timothy M. Bechtold (argued), Bechtold Law Firm, Missoula, Montana, for Plaintiff-Appellant.

Thekla Hansen-Young (argued), John P. Tustin, Robert P. Stockman, and Andrew C. Mergen, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.; Dana Jacobsen, Office of the Regional Solicitor, United States Department of the Interior, Denver, Colorado; Alan Campbell, Office of the General Counsel, United States Department of Agriculture, Missoula, Montana; for Defendants-Appellees.

Julie A. Weis, Haglund Kelley LLP, Portland, Oregon, for Amicus Curiae Kootenai Tribe of Idaho.

**OPINION**

W. FLETCHER, Circuit Judge:

Alliance for the Wild Rockies ("Alliance") brings suit under the National Forest Management Act ("NFMA"), the Endangered Species Act ("ESA"), and the National Environmental Policy Act ("NEPA") to enjoin the U.S. Forest Service ("Forest Service") from constructing 4.7 miles of new roads in connection with a Forest Service project in the Kootenai National Forest. Alliance's claims are premised on the argument that the new roads will create a "net permanent increase[] in linear miles of total roads" in violation of the Access Amendments to the Kootenai National Forest Plan ("Forest Plan"). We hold that the 4.7 miles of roads at issue will not violate the Forest Plan because they will be blocked to prevent motorized access upon completion of the project.

## I.  Background

In 2013, the Forest Service approved the Pilgrim Creek Timber Sale Project ("Pilgrim Project" or "Project") in Montana's Kootenai National Forest. The purpose of the Project is to "maintain and increase forest resilience to insects, disease and disturbance by increasing age class diversity in lodgepole pine stands, improving growing conditions and favoring root disease resistant species . . . , and improving big game forage production while providing for the local economy through commercial timber harvest." The Project requires the construction of approximately 4.7 miles of new roads, to be used by Forest Service personnel and government contractors during Project implementation. Upon completion of the Project, the Forest

Service will close the new roads to all motorized travel with "an earthen barrier, rocks, or other barrier."

The Pilgrim Project implicates several statutes. NFMA is implicated because it requires that the Project be consistent with the Kootenai Forest Plan. *See* 16 U.S.C. § 1604(i); *Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1056 (9th Cir. 2012) ("NFMA requires that the proposed site-specific actions be consistent with the governing Forest Plan."). The ESA is implicated because the Forest Plan incorporates portions of the Grizzly Bear Recovery Plan, developed after consultation with the U.S. Fish and Wildlife Service ("Fish and Wildlife Service"). *See* 16 U.S.C. § 1536(a) (setting forth consultation requirements when a threatened species is present in a project area). Finally, NEPA is implicated because it requires the preparation of an Environmental Impact Statement ("EIS") for agency actions "significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C).

In 1975, the Fish and Wildlife Service listed the grizzly bear as "threatened" under the ESA, and in 1993 it promulgated a revised Grizzly Bear Recovery Plan ("Recovery Plan"). The Recovery Plan designates as "recovery zones" areas in the Kootenai National Forest in which there is a significant likelihood of grizzly bear presence. The Recovery Plan prescribes forest management measures within these zones to protect grizzly bears and to facilitate their survival and reproduction. The Recovery Plan also designates areas outside the recovery zones that grizzly bears sometimes frequent, called "Bears Outside of Recovery Zones" or "BORZ polygons." The Recovery Plan prescribes less protective management measures in BORZ polygons

than in recovery zones. The Pilgrim Project is located in the Clark Fork BORZ polygon of the Kootenai National Forest.

In 2011, the Kootenai Forest Plan was amended by the Forest Plan Amendments for Motorized Access Management within the Selkirk and Cabinet-Yaak Grizzly Bear Recovery Zones ("Access Amendments"). The Record of Decision ("ROD") for the Access Amendments established motorized-vehicle access restrictions in recovery zones and BORZ polygons. In developing the Access Amendments, the Forest Service consulted with the Fish and Wildlife Service under Section 7(a) of the ESA. *See* 16 U.S.C. § 1536(a); 50 C.F.R. § 402.14(a). As part of that process, the Fish and Wildlife Service issued a Biological Opinion containing an Incidental Take Statement. *See* 16 U.S.C. § 1532(19) (defining "take"); *see also Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1242 (9th Cir. 2001) (explaining 50 C.F.R. § 402.14(g)(7), (i)(1), which require the Fish and Wildlife Service to issue incidental take statements in certain circumstances). The Statement permitted incidental taking of grizzly bears so long as the total linear miles of roads in each BORZ polygon remained below a baseline limit specific to that BORZ polygon: "In the BORZ, permanent increases in linear miles of open road and/or permanent increases in linear miles of total road beyond the standards in Table 4 of this biological opinion will result in levels of take that exceed the amount of incidental take we anticipate here." In compliance with the Incidental Take Statement, Standard II(B) of the Access Amendments prohibits any net permanent increase in permanent roads in a BORZ polygon. The standard specified in Table 4 for the Clark Fork BORZ polygon is 256.1 "total linear miles of roads."

In February 2013, in connection with the preparation of the Project's EIS, the Forest Service asked the Fish and Wildlife Service to review the proposed Project. The Fish and Wildlife Service responded by letter in March 2013, writing that "the proposed action is not likely to adversely affect the threatened grizzly bear . . . in ways other than those analyzed in the 2011 biological opinion [prepared in connection with the Access Amendments]." The letter described the proposed new roads as follows: "Approximately 4.7 miles of new, permanent road would be constructed and closed with a permanent closure device (earth berm, rocks, reclamation) post-harvest." The Fish and Wildlife Service concluded, "The proposed project would be in compliance with the standards provided in the Access Amendment[s]."

In May 2013, the Forest Service issued an ROD choosing Alternative 3 of the EIS. The ROD provided:

> Under Alternative 3, [there will be] 4.7 miles of new road construction . . . . Access to new construction . . . would be controlled post treatment by gates or other closure devices. These closure devices allow for motorized access sometime in the future, which may help fire suppression and stand-tending operations such as pre-commercial thinning.

## II.  Prior Proceedings

Alliance brought suit in October 2013, challenging the Pilgrim Project under NFMA, the ESA, and NEPA. Alliance contended, inter alia, that the Project would create a net increase in linear miles of total roads in violation of Standard

II(B) of the Access Amendments.  Alliance contended that the Project would therefore (1) violate NFMA by failing to comply with the Access Amendments to the Forest Plan; (2) violate the ESA by failing to comply with the Incidental Take Statement's mandate incorporated into the Access Amendments; and (3) violate NEPA by incorrectly stating in the EIS and ROD that the Project will comply with the Access Amendments.

Focusing on the above-quoted statement from the 2013 ROD, the district court found that the ROD "indicates that . . . upon completion of Project activities the new roads will not be appropriately closed with a permanent closure device as required by Standard II(B)."  The court held that, as approved in the ROD, the Project violated NFMA, the ESA, and NEPA.  It enjoined the Project pending preparation of a supplemental EIS.

In July 2014, the Forest Service issued a Clarification/Amendment of the ROD.  The Clarification/Amendment stated, "It was, and remains, our intent that all new permanent roads constructed for the project will be closed with a permanent closure device consistent with the Grizzly Bear Access Amendment and Kootenai Forest Plan." The Clarification/Amendment amended several sections of the 2013 ROD to make this intent clear.  For example, the following sentences were added to the ROD: (1) "All new permanent road segments constructed for the project will be made impassable to motorized vehicles by installation of an earthen barrier, rocks, or other barrier." (2) "After completion of ha[r]vest-related activities, . . . new roads constructed for the project will be made impassable to motorized vehicles through installation of an earthen barrier, rocks, or other barrier."

After issuing the Clarification/Amendment, the Forest Service moved to lift the district court's injunction. The court granted the motion, holding that the Clarification/Amendment made clear that the Pilgrim Project will comply with Standard II(B) of the Access Amendments.

Alliance appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## III. Standard of Review

We review de novo the district court's decision to grant summary judgment. *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2005). We review the Forest Service's compliance with NFMA, the ESA, and NEPA under the Administrative Procedure Act ("APA"). *Great Old Broads for Wilderness v. Kimbell*, 709 F.3d 836, 846 (9th Cir. 2013); *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014). We may set aside an agency action under the APA if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[T]he Forest Service's interpretation and implementation of its own forest plan is entitled to substantial deference." *Native Ecosystems Council*, 697 F.3d at 1056. In the face of ambiguity, we "defer to the Forest Service's reasonable interpretation of the Forest Plan's requirements." *Ecology Center v. Castaneda*, 574 F.3d 652, 661 (9th Cir. 2009).

## IV. Discussion

The sole question presented on appeal is whether the barriered 4.7 miles of new roads count toward "linear miles of total roads" under Standard II(B) of the Access

Amendments.  If they count, Alliance prevails on its claims under NMFA, the ESA, and NEPA.  If they do not, Alliance loses on all these claims.

Alliance does not dispute that the Forest Service has committed to use a berm, barrier, or similar closure device to close the 4.7 miles of new roads to motorized access after the Project is completed.  However, it argues that roads closed in this manner count as part of the linear miles of total roads.  Thus, according to Alliance, the newly constructed roads will result in a "net permanent increase[] in linear miles of total roads" in violation of Standard II(B).

In relevant part, Standard II(B) provides:

> B.  The Forest shall ensure no net permanent increases in linear miles of total roads in any individual BORZ area above the baseline conditions identified in Table 16 [identical to Table 4 in the Incidental Take Statement].
>
> . . .
>
> 1.  Temporary increases (not off-set) in linear miles of total roads are acceptable under the following conditions:
>
>> a.  Newly constructed roads would be effectively gated and would be restricted with a CFR closure clarifying they are not open for public use.

b. These roads shall be closed immediately upon completion of activities requiring use of the road . . . . Roads must be closed with a berm, guardrail or other measure that effectively prevents motorized access, and put in a condition such that a need for motorized access for maintenance is not anticipated for at least 10 years.

c. Upon completion of a land management project, linear miles of total roads would be returned to or below the baseline levels contained in Table 16.

We hold that it was not arbitrary and capricious for the Forest Service to conclude that roads closed to motorized access by berms or barriers do not count toward "linear miles of total roads." Standard II(B) expressly permits "[t]emporary increases in linear miles of total roads" so long as the roads are "closed immediately upon completion of activities" with a "berm, guardrail or other measure that effectively prevents motorized access." This language strongly suggests that roads closed in such a manner do not fall within the "linear miles of total roads" metric. Alliance has proffered arguments that support a different reading of Standard II(B), but none renders the Forest Service's interpretation unreasonable. *See Ecology Center*, 574 F.3d at 661 (explaining that, in the face of ambiguity, "we defer to the Forest Service's reasonable interpretation of the Forest Plan's requirements."); *Native Ecosystems Council*, 697 F.3d at 1056 ("[T]he Forest Service's interpretation and

implementation of its own forest plan is entitled to substantial deference.").

At oral argument, counsel for Alliance suggested that the Forest Service's contemplated berms will not effectively prevent motorized use of the new roads because all-terrain vehicles can circumvent the berms and access the roads. Standard II(B) permits temporary increases in linear miles of total roads only if the roads are later "closed with a berm, guardrail or other measure that *effectively* prevents motorized access." (Emphasis added.) Alliance has not pointed to any evidence to refute the Forest Service's assertion that the berm will effectively prevent motorized use. We therefore take the Forest Service at its word, with the understanding that any closure that fails to effectively prevent motorized access also fails to comply with Standard II(B) of the Access Amendments.

Alliance's earlier challenge to the Pilgrim Project, as approved by the ROD, was properly sustained by the district court because the ROD required closure only by gates, and allowed access to the road for maintenance and other purposes. Such closure clearly did not comply with the manner and degree of closure required by Standard II(B). However, the Forest Service brought the Project into compliance with Standard II(B) when its Clarification/Amendment amended the ROD to provide that closure of the 4.7 linear miles of new road would be done as required by Standard II(B).

## V.  Conclusion

Because the Forest Service's interpretation of its own Forest Plan was reasonable, Alliance cannot prevail on its NFMA, ESA, and NEPA claims.

**AFFIRMED.**