**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILD WILDERNESS; WINTER WILDLANDS ALLIANCE; BEND BACKCOUNTRY ALLIANCE, *Plaintiffs-Appellants*, | No. 14-35505 D.C. No. 6:13-cv-00523-TC |
| v. | |
| JOHN ALLEN, Forest Supervisor of the Deschutes National Forest; UNITED STATES FOREST SERVICE, a federal agency, *Defendants-Appellees*, | OPINION |
| and | |
| OREGON STATE SNOWMOBILE ASSOCIATION; AMERICAN COUNCIL OF SNOWMOBILE ASSOCIATIONS; KEN ROADMAN; ELK LAKE RESORT, *Intervenor-Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Oregon
Thomas M. Coffin, Magistrate Judge, Presiding

Argued and Submitted October 5, 2016
Portland, Oregon

Filed September 8, 2017

Before:  Sidney R. Thomas, Chief Judge, and Richard R. Clifton and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nguyen

## SUMMARY[*]

### Environmental Law

The panel affirmed the district court's summary judgment in favor of the United States Forest Service in an action brought by Wild Wilderness, a group representing non-motorized recreationalists, challenging the Forest Service's approval of the building of Kapka Sno-Park, a parking lot primarily designed for motorized recreationalists in the Deschutes National Forest in Oregon.

The panel held that the case was not moot where Wild Wilderness's complaint identified several remedies that remained available despite Kapka Sno-Park's completion. The panel also held that Wild Wilderness's claims did not lack redressability.

The panel held that the Forest Service did not violate the National Forest Management Act by approving the Kapka Sno-Park.  The panel held that Kapka Sno-Park was not inconsistent with the Deschutes Forest Plan.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that the Forest Service did not violate the National Environmental Policy Act ("NEPA") by first issuing a Draft Environmental Impact Statement but then reversing course and issuing a Finding of No Significant Impact and a final Environmental Assessment in its place. The panel also rejected Wild Wilderness's other claims of alleged Forest Service NEPA violations.

## COUNSEL

Thomas C. Buchele (argued), Earthrise Law Center, Portland, Oregon; Lauren Marie Rule (argued), Advocates for the West, Portland, Oregon; for Plaintiffs-Appellants.

Sean Edward Martin (argued), Assistant United States Attorney; Kelly A. Zusman, Appellate Chief; Billy J. Williams, United States Attorney; United States Attorney's Office, Portland, Oregon; for Defendants-Appellees.

Paul A. Turcke (argued), Moore Smith Buxton & Turcke, Boise, Idaho, for Intervenor-Defendants-Appellees.

## OPINION

NGUYEN, Circuit Judge:

Winter recreation has become increasingly popular in the Deschutes National Forest in Central Oregon, exacerbating parking shortages and on-snow user conflicts between motorized and non-motorized recreationalists. In 2012, the National Forest Service approved the building of Kapka Sno-Park, a parking lot primarily designed for motorized recreationalists, and issued an Environmental Assessment (EA) for the project. Wild Wilderness, a group representing non-motorized users, challenged approval of the project on the grounds that the Forest Service had violated both the National Forest Management Act (NFMA) and the National Environmental Policy Act (NEPA). The district court granted summary judgment in favor of the Forest Service. Reviewing de novo, *Alliance for the Wild Rockies v. Bradford*, 856 F.3d 1238, 1242 (9th Cir. 2017), we affirm.

## I.

## FACTUAL BACKGROUND

The two most popular winter activities in Deschutes National Forest are snowmobiling and cross-country skiing. Cross-country skiers and other recreationalists who prefer non-motorized activities often dislike the noise and tracks left by snowmobilers, and the Forest Service has recognized the potential for conflicts between the two groups for many years. These on-snow conflicts are concentrated in the area surrounding Dutchman Flat and Tumalo Mountain, which due to its high terrain and easy accessibility is ideal territory

for both snowmobilers and cross-country skiers.[1]  A lack of parking has further fueled conflict between these groups of users.  Excluding Kapka, there are seven "sno-parks" within the Cascade Lakes Highway area of Deschutes.  Three are for non-motorized use only, three are for both non-motorized and motorized use, and one is for motorized use only.

The Forest Service has long considered building additional parking for winter recreationalists in this area.  In 1996, it considered expanding existing sno-parks but ultimately decided not to, in part because of a desire to focus on alleviating on-snow user conflicts.  While expanding the sno-parks could have alleviated conflicts over parking, more parking would have meant more users, potentially resulting in more on-snow conflicts.  In 2004, the Forest Service banned snowmobiles from approximately 1,375 acres in the Dutchman Flat and Tumalo Mountain area that were particularly popular with skiers to reduce on-snow user conflicts.  It also began analyzing the possibility of building a new sno-park in the area, near Kapka Butte.

In 2006, the Forest Service issued a scoping notice, which proposed building Kapka Sno-Park primarily for motorized users while closing the neighboring Dutchman Sno-Park and its immediate surroundings to motorized use. The purpose and need of the action, according to the notice, were to reduce parking congestion and reduce user conflicts between the different user groups by separating them.  The notice also stated that recent regulatory changes had gone into effect to separate uses and were succeeding in reducing conflicts in the Dutchman Flat and Tumalo Mountain areas.

---

[1] A map of the area is attached as Appendix 1.

Internal emails in 2008, however, show that the Forest Service at some point had decided to focus only on parking congestion near Dutchman Flat in a smaller project instead of simultaneously tackling the parking shortage *and* further attempting to separate uses and thereby reduce user conflicts. The Forest Service issued a new scoping notice in 2009 focused only on the parking issue and a notice of intent to issue an Environmental Impact Statement (EIS). The scoping notice stated that the Forest Service "expect[ed] the analysis to be documented in an environmental impact statement" and that a draft would be available soon.

Eight months after issuing the 2009 scoping notice, the Forest Service released a Winter Recreation Sustainability Analysis. The analysis discussed the increasing use of certain areas of the forest for winter recreational activities, particularly along the Cascade Lakes corridor. The higher demand led to parking "bottlenecks" at some sno-parks due to limited parking capacity. The analysis also noted that the vast majority of the forest had little or no conflict issues, but that the area around Kapka Butte had experienced some on-snow conflicts, which could possibly be exacerbated if additional parking capacity were added because it would likely increase the number of motorized users in the area.

The Forest Service issued a Draft EIS in April 2011. The Draft EIS's "Purpose and Need" was twofold—to provide additional parking capacity and to create trails for Nordic skiers with dogs. Due to the narrow purpose and need, no alternatives that would have limited motorized use in the area were considered as they were outside the Statement's scope.

After the comment period ended, the Forest Service planned internally to issue a supplemental Draft EIS in response to public comments regarding skiers with dogs and

public safety. The agency continued to work on the Draft EIS through June 2012.

While working on the supplemental draft, the Forest Service began discussions with the Federal Highway Administration (FHWA) about it becoming a joint-lead agency on the EIS. The agencies decided to become co-lead agencies and met on June 28, 2012 to discuss FHWA's comments on the Draft EIS. By becoming a joint-lead agency, FHWA was also required to sign a Record of Decision, either separately or jointly with the Forest Service. A staffer at FHWA told the Forest Service that FHWA would be willing to sign a separate Record of Decision, but "it would be great to jointly sign."

By July 2, four days after the meeting with the FHWA, the Forest Service had decided to withdraw the Draft EIS and issue instead a Finding of No Significant Impact and an EA instead of an EIS. A Finding of No Significant Impact is mandatory for an agency to issue an EA in place of an EIS. 40 C.F.R. § 1501.4(e).

Two months later, on September 14, 2012, the Forest Service issued the final EA along with its Decision Notice and Finding of No Significant Impact. The EA contained the same statement of purpose and need and the same four alternatives as the Draft EIS.

The final project at Kapka consisted of a parking lot that could hold 70 vehicles with trailers and two short trails connecting the lot to existing trail systems. The option of opening the trail system to dogs was removed.

In the following days, the Forest Service published notices withdrawing its "Notice for Preparation of an Environmental Impact Statement" as well as its Draft EIS.

Wild Wilderness and other opponents to the project filed administrative appeals to the Decision Notice and Finding of No Significant Impact, which were denied, and then this lawsuit. The Oregon State Snowmobile Association alongside other pro-snowmobile groups successfully joined the case as defendant-intervenors. The Forest Service completed construction of Kapka Sno-Park in November 2014, and it was open to winter recreation use for the 2014–15 season.

## II.

## THE CASE IS NOT MOOT

As a preliminary matter, the Oregon State Snowmobile Association argues that Kapka Sno-Park is built and therefore this case is now moot. They also make the related argument that Wild Wilderness's claims lack redressability. This is because, the Association argues, Wild Wilderness's true goal is to reduce areas open to snowmobilers and the contested action did not result in more areas being open to snowmobile use.

In deciding whether a case is moot in this context, "the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be *any* effective relief." *Or. Natural Res. Council v. U.S. Bureau of Land Mgmt.*, 470 F.3d 818, 820 (9th Cir. 2006) (quoting *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th Cir. 1988)). "The party asserting mootness bears the burden of establishing that there is no effective relief remaining that the court could provide." *S. Or. Barter Fair v. Jackson Cnty.,* 372 F.3d 1128, 1134 (9th Cir. 2004). That burden is always "heavy," as a case is not moot where any effective relief may be granted, *Forest Guardians v. Johanns*,

450 F.3d 455, 461 (9th Cir. 2006), but "defendants in NEPA cases face a particularly heavy burden in establishing mootness." *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). As we have explained:

> When evaluating the issue of mootness in NEPA cases, we have repeatedly emphasized that if the completion of the action challenged under NEPA is sufficient to render the case nonjusticiable, entities could merely ignore the requirements of NEPA, build its structures before a case gets to court, and then hide behind the mootness doctrine. Such a result is not acceptable.

*Or. Natural Res. Council*, 470 F.3d at 821 (quoting *Cantrell*, 241 F.3d at 678) (internal quotation marks omitted).

This case is not moot. Wild Wilderness's complaint identified several remedies that remain available despite Kapka Sno-Park's completion. A court could order a new NEPA analysis with a broader purpose and need or with additional alternatives; issue injunctive relief requiring the Forest Service to close Kapka Sno-Park or use it only in the summer; or simply order the Forest Service to issue a full EIS. *See, e.g.*, *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 925 (9th Cir. 2000) (rejecting a mootness challenge because the court's remaining remedial powers included remanding for additional environmental review or ordering the project closed or deconstructed).

Relatedly, Wild Wilderness's claims do not lack redressability. Although the Snowmobile Association argues that Wild Wilderness's claims obscure a true desire for remedies beyond the scope of the current action, the court

may still grant some effective relief for Wild Wilderness's claims.

Because the case is neither moot nor lacking redressability, we proceed to the merits.

## III.

## THE FOREST SERVICE DID NOT VIOLATE THE NFMA

We first consider whether the Forest Service violated the NFMA by approving Kapka Sno-Park. Forest Service actions must be consistent with the governing Land and Resource Management Plan, commonly called forest plans. *Native Ecosystems Council v. U.S. Forest Serv*., 418 F.3d 953, 961 (9th Cir. 2005); 16 U.S.C. § 1604(i). The governing plan here is the Deschutes Forest Plan. "We set aside an agency's actions 'only if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *In re Big Thorne Project*, 857 F.3d 968, 973 (9th Cir. 2017) (quoting *Or. Natural Res. Council Fund v. Goodman*, 505 F.3d 884, 889 (9th Cir. 2007)).

Wild Wilderness argues that the Forest Service's action failed to comply with two sections of the Deschutes Forest Plan. We consider each in turn.

The first section of the Forest Plan outlines standards and guidelines for winter trails and includes the following provision:

> Where conflicts develop between non-motorized and motorized winter use the following sequence of steps will generally be taken:

- Trails will be designed to encourage the intended user and to discourage others. An inviting system of trails will be provided for both non-motorized and motorized users.

- Intensify educational and indirect management efforts to resolve the conflict.

- Restrict motorized use of [N]ordic trails.

- Close the area where the conflict is occurring to motorized use.

The Forest Service has indisputably used all four of these steps at different times in attempting to resolve conflicts between motorized and non-motorized users, including closing areas to motorized use. Wild Wilderness nonetheless argues that the provision forbade the Forest Service from building Kapka Sno-Park instead of closing the area to motorized use because user conflicts persisted. But nothing in this provision mandates closure of any area to motorized use. It merely outlines steps that "will generally be taken" in the event of user conflicts. The Forest Plan outlines "an aspiration, not an obligation" and therefore "there is no law for us to apply in second-guessing the agency." *Big Thorne Project*, 857 F.3d at 974. The record also does not support Wild Wilderness's claim that the Forest Service has interpreted the Forest Plan to mandate closing areas to motorized use when user conflicts persist.

Wild Wilderness argues that Kapka Sno-Park was inconsistent with the Forest Plan's "Recreation Opportunity

Spectrum," which labels areas within the forest with the recreation experiences and activities available there. *See WildEarth Guardians v. Mont. Snowmobile Ass'n*, 790 F.3d 920, 928 (9th Cir. 2015). For example, Kapka Sno-Park itself is located at "Scenic Views (MA 9)," where "Parking facilities, structures and other recreational facilities will normally be placed where they are not visible from significant viewer locations" to maintain the area's aesthetics. Again, however, this non-binding guidance for recreation planning and guidance does not appear to create any obligation that the Forest Service could have disregarded. Because Kapka Sno-Park was not inconsistent with the Forest Plan, the Forest Service did not violate the NFMA.

## IV.

## THE FOREST SERVICE DID NOT VIOLATE NEPA

Wild Wilderness claims that the Forest Service violated NEPA by first issuing the Draft EIS but then reversing course and issuing a Finding of No Significant Impact and final EA in its place. If an agency determines that an agency action does not require a final EIS, it must issue a "finding of no significant impact." 40 C.F.R. § 1501.4(e). The finding must present the reasons why an action "will not have a significant effect on the human environment and for which an environmental impact statement therefore will not be prepared" and include an EA or a summary of it. 40 C.F.R. § 1508.13. The Forest Service complied with these regulations, completing an EA and issuing a finding of no significant impact.

The Forest Service had previously intended to issue an EIS, but regulations govern that situation as well. When the Forest Service has determined that an EIS "is no longer

necessary," it must publish a withdrawal notice in the Federal Register with the date and page number of the previously published notice. 36 C.F.R. § 220.5(c). The Forest Service published such a withdrawal notice.

Wild Wilderness argues that the Forest Service faced the additional and implicit requirement that it issue a reasoned explanation as to why it had decided to issue an EA. Of course, every finding of no significant impact must by definition explain why an agency believes that the effect on the human environment of the agency's decision is too insignificant to merit an EIS. *See* 40 C.F.R. § 1508.13. But Wild Wilderness demands something slightly different—an explanation not of why an EIS was unnecessary but instead of why the Forest Service had changed its mind.

Wild Wilderness offers no support for this novel procedural requirement. *But see Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 525 (1978) (cautioning courts to not "engraft[] their own notions of proper procedures upon agencies entrusted with substantive functions by Congress"). It instead points to cases in which agencies failed to provide reasoned explanations for changes in their position on matters of policy or factual findings. *See Humane Soc'y of the U.S. v. Locke*, 626 F.3d 1040, 1049 (9th Cir. 2010); *Organized Village of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 968 (9th Cir. 2015) (en banc). The Forest Service here, however, never changed its mind on any factual or policy matter but only on how it planned to comply with its own procedural requirements. There was no agency decision to reverse, as a draft EIS is not an agency decision at all. *See Bennett Hills Grazing Ass'n v. United States*, 600 F.2d 1308, 1309 (9th Cir. 1979) (ruling that a draft EIS was not yet subject to judicial review because it was not yet an agency decision).

The Forest Service may have withdrawn the EIS because the Kapka Sno-Park was significantly scaled down from earlier plans or because the initial plan to release one was overly cautious—either way, there was no additional procedural requirement to explain the basis of its decision.

Wild Wilderness suggests that the true motivation to withdraw the EIS arose out of the Forest Service's meeting with the FHWA. The record does not establish whether this is true, but more importantly, it is not clear what improper motive either agency could have had to issue an EA in place of an EIS following the meeting. Wild Wilderness suggests that as a result of the switch from the EIS to the EA, the FHWA would not have had to sign the record of decision, but in internal emails FHWA staff wrote, "it would be great to jointly sign" a record of decision.

Underscoring our conclusion is that Wild Wilderness does not articulate *where* the Forest Service was obligated to provide a reasoned explanation for withdrawing the Draft EIS. It cannot plausibly have been obligated to do so in the withdrawal notice, as the regulations governing such a notice clearly contemplate a very brief statement. 36 C.F.R. § 220.5(c) (stating the requirements of a withdrawal notice as "the date and Federal Register page number of the previously published notice(s)"). The finding of no significant impact need only "briefly present[] the reasons why an action, not otherwise excluded (§ 1508.4), will not have a significant effect on the human environment and for which an environmental impact statement therefore will not be prepared." 40 C.F.R. § 1508.13. While the Forest Service was obligated to explain why an EIS was not necessary, and did, there was no additional requirement that the Forest Service explain why it chose to comply with its own procedural requirements in a certain way.

The Forest Service also did not violate NEPA by failing to provide a convincing statement of reasons that Kapka Sno-Park would not significantly affect the environment. Whether an action "significantly" affects the environment requires analyzing both "context" and "intensity." 40 C.F.R. § 1508.27. "Context" means that "the significance of an action must be analyzed in several contexts such as society as a whole (human, national), the affected region, the affected interests, and the locality." *Id.* § 1508.27(a). "Intensity" requires consideration of ten factors regarding the "severity of impact." *Id.* § 1508.27(b). One of these factors may demonstrate intensity sufficiently on its own, although the presence of one factor does not necessarily do so. *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 865 (9th Cir. 2005).

The district court correctly concluded that the agency's action lacked "intensity," as not one of the intensity factors suggested that Kapka Sno-Park significantly affected the environment. First, and contrary to Wild Wilderness's arguments, the degree to which the project affected the environment was not "likely to be highly controversial." 40 C.F.R. § 1508.27(b)(4). "Controversial" refers to disputes over the size or effect of the action itself, not whether or how passionately people oppose it. *See Sierra Club v. U.S. Forest Serv.*, 843 F.2d 1190, 1193 (9th Cir. 1988). There is no dispute about the size or nature of Kapka Sno-Park and only small disputes about its effects, such as where some of the snowmobilers parking at Kapka Sno-Park will prefer to recreate. The anecdotal evidence about snowmobiler preferences that Wild Wilderness marshaled for this factor did not rise to the level of the sorts of scientific controversies that would substantially undermine the reasonableness of the Forest Service's conclusions. *See Humane Soc'y*, 626 F.3d at 1057.

Wild Wilderness also argues that the action threatened a violation of federal law, the NFMA, another intensity factor. 40 C.F.R. § 1508.27(b)(10). As discussed above, however, building Kapka Sno-Park did not violate the NFMA and therefore did not threaten a violation of federal law.

Wild Wilderness lastly claims that there may be cumulatively significant effects when the project is considered with other related actions. 40 C.F.R. § 1508.27(b)(7). The EA examined the cumulative effects with related actions, however, and none of the related potential actions appeared to compound on-snow user conflicts between motorized and non-motorized users. None of the potential actions about which Wild Wilderness was concerned even involved motorized use.

Wild Wilderness claims that the EA's Statement of Purpose and Need and range of alternatives for Kapka Sno-Park were unreasonably narrow. NEPA requires both that an EA specify the need for a proposed action, 36 C.F.R. § 220.7(b)(1), and that the agency study, develop, and describe appropriate alternatives. *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1050 (9th Cir. 2013). The latter obligation is lessened but still extant when preparing an EA instead of an EIS. *Id.* Courts afford significant but not unlimited discretion to agencies to articulate an action's statement of purpose and need. *Westlands Water Dist. v. U.S. Dep't of the Interior*, 376 F.3d 853, 866 (9th Cir. 2004). The scope of the analysis of alternatives depends on the underlying purpose, so the agency need only evaluate alternatives that are reasonably related to the purposes of the action. *League of Wilderness Defenders—Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, 689 F.3d 1060, 1069 (9th Cir. 2012).

The EA here articulated the purpose and need for Kapka Sno-Park as "provid[ing] safe, high elevation parking that will enhance a variety of winter recreation opportunities and provide access to over snow trail systems near the Cascade Lakes Highway corridor." There is support in the record for the need for safe parking. Wild Wilderness attacks the statement as unreasonably narrow because it ignored the issue of on-snow user conflicts. The Forest Service was not obligated, however, to attack every problem in a single action. Although the Forest Service has in the past considered tackling both the parking shortage and user conflicts in a single action, they were not so intertwined that the Forest Service was unreasonable in aiming to address one without addressing the other simultaneously. Wild Wilderness claims that the Forest Service itself has in the past found that the issues could only be adequately addressed in a single action, but the record again does not support that conclusion.

As the Statement of Purpose and Need was not unreasonably narrow, neither was the range of alternatives. The scope of the analysis of alternatives depends on the underlying purpose, so an agency need only evaluate alternatives that are reasonably related to the purposes of the action. *League of Wilderness Defenders*, 689 F.3d at 1069. The EA examined the proposed action, a no-action alternative, and two other action alternatives in detail. The action alternatives were significantly distinct from one another with regard to their proposals for relocating trails, varying the size of the parking lot, and changing the size of non-motorized areas. The EA also briefly considered seven additional alternatives with explanations of why they were not considered in detail. The Forest Service was not required

to provide alternatives that more aggressively addressed on-snow user conflicts.**[2]**

## V.

## CONCLUSION

The Forest Service violated neither the NFMA nor NEPA in approving Kapka Sno-Park, and therefore the judgment of the district court is

**AFFIRMED**.

---

**[2]** Because we hold that the Forest Service did not violate NEPA by failing to sufficiently address the issue of on-snow user conflicts, we need not address the question of whether on-snow user conflicts are outside the scope of the agency's required NEPA analysis entirely because they are "citizens' subjective experiences," *Bicycle Trails Council of Marin v. Babbitt*, 82 F.3d 1445, 1466 (9th Cir. 1996), not the "physical environment," *Metro. Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 772 (1983).

# APPENDIX 1



**ER1577**