**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| INFORMING CITIZENS AGAINST RUNWAY AIRPORT EXPANSION,<br><br>Petitioner,<br><br>v.<br><br>FEDERAL AVIATION ADMINISTRATION,<br><br>Respondent. | No. 17-71536<br><br>Agency<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Federal Aviation Administration

Argued and Submitted December 6, 2018
Seattle, Washington

Before: GRABER, McKEOWN, and CHRISTEN, Circuit Judges.

Petitioner Informing Citizens Against Runway Airport Expansion seeks

review of the Federal Aviation Administration's ("FAA") decision to approve a

project to construct a 5,200-foot runway at the Ravalli County Airport in Hamilton,

Montana. The FAA's action was not "arbitrary, capricious, an abuse of discretion,

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), so we deny the petition.

1. Petitioner has standing. Petitioner's members raised environmental concerns throughout the comment period and connected their concerns about property values to environmental issues. Their concerns fall within the National Environmental Policy Act's ("NEPA") environmental zone of interests. Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 224–25 (2012).

2. The FAA acted within its discretion, and exercised its technical expertise, in using fuel sales to estimate annual operations at the airport.[1] The FAA made the underlying data about the fuel sales available with the 2014 environmental assessment, which explained that the forecasting report relied in part on handwritten records of fuel sales to estimate operations. NEPA requires an agency to "disclose the hard data supporting its expert opinions," but NEPA does not dictate how the agency must disclose that data. Ecology Ctr. v. Castaneda, 574 F.3d 652, 667 (9th Cir. 2009). Here, the FAA provided "sufficient environmental information, considered in the totality of circumstances, to permit members of the

---

[1] We assume, without deciding, that Petitioner properly raised this issue during the administrative process.

public to weigh in" and "inform the agency decision-making process." Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs, 524 F.3d 938, 953 (9th Cir. 2008).

Especially in the realm of aviation forecasting, the FAA has substantial discretion to choose among available forecasting methods, as long as it explains its choice. Nat'l Parks & Conservation Ass'n v. U.S. Dep't of Transp., 222 F.3d 677, 682 (9th Cir. 2000); see also N. Plains Res. Council, Inc. v. Surface Transp. Bd., 668 F.3d 1067, 1075 (9th Cir. 2011) ("The agency must explain the conclusions it has drawn from its chosen methodology, and the reasons it considered the underlying evidence to be reliable." (internal quotation marks omitted)). Here, the FAA explained that FlightAware cannot capture every operation at the airport, so the FAA relied on records of the airport's fuel sales to get a more complete picture of annual operations. The FAA also explained that the records contained identifying numbers linked to specific aircraft, enabling the agency to determine which planes bought fuel and eliminate duplicates that also showed up in FlightAware's data. In sum, the FAA gave the necessary explanation here, so we defer to its chosen methodology for aviation forecasting.

3. The FAA reasonably articulated the project's purpose and need and considered an appropriate range of alternatives. Substantial evidence—in the form

3

of FlightAware data and records of fuel sales—supports the FAA's conclusion that B-II operations at the airport either exceeded, or came so close to, the 500-operations threshold that the airport needed a 5,200-foot runway to accommodate B-II aircraft safely. Although a 4,800-foot runway would accommodate most planes using the airport, the FAA decided that the airport required a 5,200-foot runway because: (1) the airport sees some use by larger planes that would benefit from a 5,200-foot runway; (2) the 5,200-foot runway would allow planes to carry more fuel, passengers, and cargo (in particular, firefighting Forest Service planes could carry their full capacity of fire retardant); and (3) the FAA has limited funds to disburse, and it would be financially responsible to build a 5,200-foot runway initially instead of building a 4,800-foot runway and later extending it by 400 feet to accommodate larger planes.

Moreover, the FAA initiated its environmental assessments in response to the County's project proposal, but the FAA did not simply adopt the County's goal of having a 5,200-foot runway as its own. An agency may allow a private interest to give context to its statement of purpose and need. See Nat'l Parks & Conservation Ass'n v. BLM, 606 F.3d 1058, 1071 (9th Cir. 2010) (considering the BLM's purpose and need statement "against the background of a private need"). And the FAA has a statutory mandate to promote "the safe operation of the airport

and airway system" and efficient air transportation. 49 U.S.C. § 47101(a)(1), (b). Providing adequate runway length furthers both of those goals by giving pilots higher safety margins and allowing aircraft to fly at full capacity. Against that background, the FAA did not define the purpose and need "in unreasonably narrow terms." League of Wilderness Defs.-Blue Mountains Biodiversity Project v. U.S. Forest Serv., 689 F.3d 1060, 1069 (9th Cir. 2012).

Consequently, the FAA also acted reasonably by seriously considering only alternatives that involved a 5,200-foot runway. See Wild Wilderness v. Allen, 871 F.3d 719, 729 (9th Cir. 2017) ("As the Statement of Purpose and Need was not unreasonably narrow, neither was the range of alternatives."). An agency need only evaluate alternatives that are reasonably related to a project's purpose. Id. at 728. Considering an alternative that maintained the current runway length would have contravened the FAA's mandate to promote safe and efficient air transportation, § 47101(a)(1), (b), given that past assessments of the airport recognized that the current runway can accommodate only 75% of B-II aircraft. Because keeping the current runway length was not a viable alternative, the FAA did not violate NEPA by failing to examine that alternative. League of Wilderness Defs., 689 F.3d at 1071.

5

4. The FAA addressed the project's effect on property values sufficiently to comply with NEPA. The FAA examined several studies about the effect of aircraft noise on property values. The FAA also explained that no specific studies existed for the airport, although "noise modeling" for the preferred alternative showed that no residential properties would come within "the 65 DNL contour"—the area where planes are loudest. Petitioner complains that the FAA did not address the studies that its members provided, but "an agency need not respond to every single scientific study or comment." Ecology Ctr., 574 F.3d at 668. Petitioner has not shown how the FAA's failure to respond to any specific comment or study renders its final decision arbitrary.

Petitioner also argues that it should have had another chance to comment on the project's effect on property values after the FAA released the final environmental assessment in 2017. Petitioner's argument is untenable as a practical matter because it would create an endless loop in the administrative process; an agency could never proceed with an action as long as the public continued to comment on new information that the agency released.

5. The FAA gave the public a meaningful opportunity to participate in the decision-making process. The comment period for the 2014 environmental assessment lasted 73 days, including an extension at Petitioner's request. The

6

2014 assessment contained information on each subject about which Petitioner's briefs expressed concern. Although NEPA's standards for the necessary level of public participation remain "amorphous," this court has recognized that NEPA does not require "substantial" public participation. See Cal. Trout v. FERC, 572 F.3d 1003, 1017 (9th Cir. 2009) ("We have held that a complete failure to involve or even inform the public about an agency's preparation of an [environmental assessment] would violate NEPA's regulations, but have also concluded that the circulation of a draft [environmental assessment] is not required in every case." (citations and internal quotation marks omitted)).

6. The FAA was not required to prepare an environmental impact statement. The mere fact that an agency prepared a lengthy environmental assessment does not, without more, demonstrate that the agency must prepare an environmental impact statement. See City of Las Vegas v. FAA, 570 F.3d 1109, 1115 (9th Cir. 2009) (explaining that issuing a finding of no significant impact "excuses the agency from its obligation to prepare an [environmental impact statement]").

**Petition DENIED.**