**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY OF LAS VEGAS, NEVADA, a
political subdivision of the State
of Nevada; ENVIRONMENTAL
COALITION, INC., a Nevada
corporation; CANYON GATE
HOMEOWNERS ASSOCIATION, INC., a
Nevada corporation; CANYON
RIDGE HOMEOWNERS ASSOCIATION
INC., a Nevada Corporation; SUN
CITY SUMMERLIN COMMUNITY
ASSOCIATION, INC., a Nevada
corporation; VALERIE E. WEBER,
Member, Nevada State Assembly,
Clark County District 5; ROBERT
W. HALL, an individual; GREG
TOUSSAINT, an individual; AND
CHARLES JONES, an individual,
                        *Petitioners,*

                v.

FEDERAL AVIATION ADMINISTRATION,
United States Department of
Transportation; MARY E. PETERS,
Secretary of Transportation;
MARION C. BLAKEY, Administrator,
Federal Aviation Administration;
and WILLIAM C. WITHYCOMBE,
Regional Administrator, FAA
Western Pacific Region,
                        *Respondents.*

No. 07-70121

FAA FONSI/ROD

OPINION

On Petition for Review of an Order
of the Federal Aviation Administration

Argued and Submitted
October 22, 2008—San Francisco, California

Filed June 12, 2009

Before: Mary M. Schroeder, Dorothy W. Nelson and
Stephen Reinhardt, Circuit Judges.

Opinion by Judge Reinhardt

## COUNSEL

Bradford R. Jerbic, Esq., City Attorney, Las Vegas, Nevada, for petitioner City of Las Vegas.

Barbara E. Lichman, Esq.; Berne C. Hart, Esq.; Ricia R. Hager, Esq., Chevalier, Allen & Lichman, LLP, Costa Mesa, California, for the petitioners.

Anne Christenson, Esq.; Joseph Manalili, Esq., Office of General Counsel, Federal Aviation Administration, Washington, DC, for the respondents.

Ronald J. Tenpas, Esq., Acting Assistant Attorney General, Andrew C. Mergen, Esq.; Ronald M. Spritzer, Esq., Environment & Natural Resources Division, Washington, DC, for the respondents.

---

## OPINION

REINHARDT, Circuit Judge:

In 2006, the Federal Aviation Administration (FAA) issued a Finding of No Significant Impact (FONSI)/Record of Decision (ROD) approving the modification of the departure route at Las Vegas McCarran International Airport that would direct a third of the eastbound flights departing west from one of the runways to complete a turn to the north of the airport instead of the south. The City of Las Vegas and other communities to the north of the airport, as well as individual residents of those communities, have filed a petition for review challenging the FONSI/ROD under the Administrative Procedure Act (APA), the National Environmental Policy Act (NEPA), and the Clean Air Act (CAA). We deny the petition.

## I.   Factual Background

This case involves the flight departure paths from one of the runways at the Las Vegas McCarran International Airport.

There are two sets of parallel runways at the airport: one set oriented from east to west (7L/R and 25L/R) and one set oriented from north to south (1L/R and 19L/R). Most of the planes depart to the west and to the south due to prevailing winds, but many of those flights are bound for destinations to the east. Prior to 2001, more than 60% of eastbound flights departing to the west from Runway 25R flew west for some time and then turned to the right over the territory to the north of the airport.

In 2001, the FAA issued a FONSI/ROD to implement a new plan — "the Four Corner Post Plan" — that directed approximately 95% of the flights departing westward from Runway 25R but heading to the east to turn left over the territory to the south of the airport. The remaining 5% of the flights still turned right and completed the turn in the northerly direction, following a slightly different path from that taken before. According to the petitioners, this new plan was an improvement over the earlier route because it avoided flying above the more densely populated area to the north of the airport, including Las Vegas, or near the Nellis Air Force Base and North Las Vegas Airport.

In 2005, the FAA proposed another change to the flight paths: about a third of the eastbound flights departing west from Runway 25R would turn right along a new northern path, while two-thirds would continue the left turn under the Four Corner-Post Plan. The stated purpose of increasing the air traffic to the north was to improve airspace efficiency and reduce departure delays. On November 22, 2005, the FAA made available for public review and comment the Draft Supplemental Environmental Assessment (DSEA) of the proposed flight paths.

At the end of December 2005, after the publication of the DSEA, the FAA learned that its proposal violated the design criteria for flight paths in FAA Order 8260.44A, which establishes the minimum leg lengths between each "waypoint" —

predetermined geographical positions that map out the desired departure path of the flights, including when the flight should begin its turn. The FAA Air Traffic Division then modified the proposed flight path by adding another waypoint, setting the maximum flight speed, and imposing some limits on the use of the procedure. Because these changes to the route still did not satisfy FAA Order 8260.44A, the Air Traffic Division also applied for a waiver of the design criteria pursuant to FAA Order 8260.19C. Such waivers are forwarded to the FAA Flight Technologies and Procedures Division for approval. *See* FAA Order 8260.19C § 830(i).

On November 14, 2006, the FAA made the Final Supplemental Environmental Assessment (FSEA) available to the public, and concurrently issued the FONSI/ROD, which gave agency approval to the proposed route without the need for a more detailed Environmental Impact Statement (EIS). *See* Notice of Availability, 71 Fed. Reg. 67949-03 (Nov. 24, 2006). At that point, however, the waiver of the design criteria had not been approved yet by the Flight Technologies and Procedures Division. The waiver was approved on January 19, 2007.[1]

Petitioners filed a petition for review of the agency order on January 11, 2007. We denied Petitioners' Emergency Motion for Stay Pending Review of Agency Order on March 19, 2007, and thereafter the FAA began to use the northern departure path. We now deny the petition for review.

---

[1]We grant Petitioners' Request for Judicial Notice in Support of Petitioners' Reply Brief Exhibit A, which establishes the undisputed fact that the waiver was approved on January 19, 2007, after the close of the administrative proceedings. Fed. R. Evid. 201; *see Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 924 n.3 (9th Cir. 2002) (taking judicial notice, on appeal, of a decision released by an administrative law judge after the district court's decision).

## II.   Standing

**[1]** To bring the petition for review, at least one of the petitioners must have standing. *See Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981). Las Vegas asserts that it has standing based on a procedural injury. To establish such standing, Las Vegas must show that it was accorded a procedural right to protect its interests and that it has concrete interests that are threatened. *See Douglas County v. Babbitt*, 48 F.3d 1495, 1500 (9th Cir. 1995). It satisfies the first requirement because NEPA accords a procedural right to "local agencies, which are authorized to develop and enforce environmental standards," 42 U.S.C. § 4332(2)(C), and Las Vegas is a local agency so authorized under Nevada law. *See* Nev. Rev. Stat. §§ 278.010-278.630; *Churchill County v. Babbitt*, 150 F.3d 1072, 1078 (9th Cir. 1998), *as amended by* 158 F.3d 491 (9th Cir. 1998). It also satisfies the second requirement because the proposed departure path directs flights over densely populated parts of the city, which threatens the city's interests in the environment and in land management.

**[2]** In addition to the procedural injury, Las Vegas must also meet the statutory requirements for standing under the Administrative Procedure Act (APA), 5 U.S.C. § 702, by establishing that there is a final agency action adversely affecting the city, and that, as a result, it suffers injury within the "zone of interests" of the statutory provision it seeks to enforce—in this case, NEPA. *Churchill County*, 150 F.3d at 1078. Las Vegas also satisfies these requirements, as the FONSI/ROD is a final agency action that adversely affects Las Vegas, and the city alleges a concrete injury to its interests in the environment and in safety which falls within the zone of interests of NEPA. *See id.*

## III.   Jurisdiction and Exhaustion

Petitioners challenge the FONSI/ROD, an order issued by the FAA Administrator under 49 U.S.C. Chapter 401 and 49

U.S.C. § 47101. We have jurisdiction under 49 U.S.C. § 46110.

Under 49 U.S.C. § 46110(d), however, we may only review objections that were raised in the administrative proceeding, unless there is "a reasonable ground for not making the objection in the proceeding." Petitioners have raised many issues before us that they did not raise before the agency.[2] They argue that they had no opportunity to do so because the FSEA was issued on the same day as the FONSI/ROD, which was the final agency action that terminated the agency proceeding. Given this timing, we conclude that, for the information that was available to the petitioners for the first time in the FSEA, the petitioners present "a reasonable ground" for not raising the objections to the new information in the proceeding. These are objections to the issuance of FONSI before the approval of the waiver and objections to the safety, noise, and air quality analyses based on modifications to the path made after the DSEA.

Petitioners, however, also raise many challenges for the first time before us based on information that was available in the DSEA and remained the same in the FSEA. For such information, petitioners had full opportunity to voice their objections during the comment period for the DSEA. Petitioners have thus failed to provide "a reasonable ground for not making the objection[s] in the proceeding," 49 U.S.C. § 46110(d), and we will not review them in the first instance.

## IV. The FAA did not act arbitrarily or capriciously in violation of NEPA in its analysis of the post-DSEA modifications to the flight path

NEPA requires federal agencies to prepare an Environmen-

---

[2]In fact, the only objection in the petition for review that was raised before the agency was the question of whether the FAA complied with the Clean Air Act.

tal Impact Statement (EIS) before undertaking "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Under the regulations implementing NEPA, an agency prepares an Environmental Assessment (EA) in order to determine whether to prepare an EIS or to issue a Finding Of No Significant Impact (FONSI), the latter of which excuses the agency from its obligation to prepare an EIS. *See Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 575 (9th Cir. 1998).

A court upholds the agency's decision to issue a FONSI instead of preparing an EIS unless the decision is arbitrary and capricious. *See Greenpeace Action v. Franklin*, 14 F.3d 1324, 1331 (9th Cir. 1992). "This standard requires [the court] to ensure that an agency has taken the requisite 'hard look' at the environmental consequences of its proposed action, carefully reviewing the record to ascertain whether the agency decision is founded on the reasoned evaluation of the relevant factors." *Id.* at 1332 (internal quotation marks and citations omitted).

Petitioners argue that the FAA's decision to issue the FONSI/ROD was arbitrary and capricious because it did not adequately consider the post-DSEA modifications to the flight path. Specifically, petitioners contend that the FAA did not take a hard look at the safety risks of the path or the noise and air quality impacts of adding a waypoint and imposing a speed restriction.[3]

---

[3]Petitioners also argue that the FAA violated the APA by issuing the FONSI/ROD without first granting the waiver required by FAA Order 8260.19C. Even if we were to consider this argument, which was not raised in the Opening Brief, FAA Order 8260.19C does not require that the waiver be issued prior to the issuance of a FONSI/ROD. The waiver was issued by the FAA Flight Technologies and Procedures Division prior to the FAA's implementation of the departure path. That complied with the FAA rule. In any event, the agency "is entitled to a measure of discretion in administering its own procedural rules" where the rules do not confer important procedural benefits upon individuals and the complaining

## A. Safety

**[3]** Although NEPA is primarily concerned about the environment, the regulations state that, in determining whether a federal action would "significantly" affect the environment, the agency should consider "[t]he degree to which the proposed action affects public health and safety." 40 C.F.R. § 1508.27. The agency is therefore responsible for taking a "hard look" at the project's effect on safety. *See Metro. Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 772, 775 (1983) (holding that the Nuclear Regulatory Commission properly considered the risk and effect of a possible nuclear accident, though it did not need to consider the effect of such risk on the psychological well-being of residents). In the context of FAA flight procedures, the Tenth Circuit has held that NEPA is satisfied where the FAA finds "equivalent level of flight safety and, a fortiori, no significant environmental impact due to aircraft collisions or crashes." *City of Aurora v. Hunt*, 749 F.2d 1457, 1468 (10th Cir. 1984), *abrogated on other grounds by Village of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992).

**[4]** The administrative record reveals that, in this case, the FAA did take a "hard look" at the safety of the proposed flight path. Before seeking a waiver for the path, the FAA Air Traffic Division conducted the series of tests required to ensure that the proposed flight path maintains an equivalent level of safety.[4] Petitioners do not challenge the adequacy or

---

party has not shown "substantial prejudice." *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538 (1970); *Steamboaters v. FERC*, 759 F.2d 1382, 1390-91 (9th Cir. 1985). Here, the petitioners clearly demonstrate no such prejudice.

[4]We grant the FAA's unopposed Motion to Supplement the Certified Index to the Administrative Record with Document 326, which contains results of the simulator flight tests. The federal rules provide that the parties may, by stipulation, supply any omission from the administrative record. Fed. R. App. P. 16.

the accuracy of these tests. Although the FSEA did not refer to the fact that the FAA had sought a waiver of the design criteria that was still pending approval from the Flight Technologies and Procedures Division, it correctly represented that the FAA had ensured "flyability" and equivalent level of safety.

Petitioners seek to bolster their argument by supplementing the administrative record with eleven documents, all e-mails between FAA officials discussing their efforts to obtain the waiver. *See* Petitioners' Motion to Supplement the Administrative Record; Supplemental Motion to Supplement the Administrative Record. Courts may review such extra-record materials only when: (1) it is necessary to determine whether the agency has considered all relevant factors and explained its decision, (2) the agency has relied on documents not in the record, (3) supplementing the record is necessary to explain technical terms or complex subject matter, or (4) plaintiffs make a showing of bad faith. *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443,1450 (9th Cir. 1996).

**[5]** Petitioners have not shown here that the e-mail evidence falls within any of the exceptions to the rule against supplementing the administrative record. The e-mails may suggest that the FAA officials sought the waiver to keep the departure path within the confines of the environmental assessment, but the issue before us is not the propriety of the reasons for applying for a waiver of the design criteria, but whether the FAA acted arbitrarily or capriciously in its analysis of safety risks.[5] As discussed above, the administrative record shows that, despite whatever justification the FAA had for requesting a waiver, the tests found equivalent levels of

---

[5]Additionally, although the petitioners suggest otherwise, the FAA does not dispute that it sought a waiver in order to implement the proposed right-hand turn, and that it did not obtain approval until after the FONSI/ROD had issued. In fact, the administrative record already contains e-mails between FAA officials showing that they sought a waiver.

safety for the proposed path. Because we do not need to consider the e-mails for any of the reasons permitting the supplementation of the administrative record, we deny the Petitioners' Motion to Supplement the Administrative Record and the Petitioners' Supplemental Motion to Supplement the Administrative Record, and we conclude that petitioners have failed to show that the modified path may have a significant effect on safety risks and thus on the environment.

## B.   Air Quality and Noise

[6] Petitioners next argue that the FAA's air quality and noise analyses were arbitrary and capricious because the FAA failed to analyze the impact of the waiver or the post-DSEA modifications on noise and air quality. This argument also fails. Whether the waiver is approved or not does not impact noise or air quality, so the FAA did not need to analyze the waiver in those sections of the FSEA. Moreover, the record shows that the FSEA accounted for the post-DSEA modifications to the flight path that would have some impact on the noise and air quality analysis, such as the addition of the waypoint and the speed restriction.[6]

## C.   Supplemental Environmental Assessment

[7] Petitioners contend that the FAA should have issued a supplemental environmental assessment (SEA) that analyzes the impact of the waiver and the post-DSEA modifications. An SEA is only required, however, when the environmental impact is significant or uncertain and the EA/FONSI is no longer valid. *See Price Road Neighborhood Ass'n, Inc. v. U.S. Dep't of Transp.*, 113 F.3d 1505, 1509-10 (9th Cir. 1997). The FAA did not need to produce an SEA for these modifica-

---

[6]We grant the FAA's unopposed Motion to Supplement the Certified Index to the Administrative Record with Document 327, which is a report showing that the noise analysis took into account the modifications that resulted from the inclusion of the altered procedures.

tions because the modifications were not significant, as evidenced by the FSEA, which included the analysis of the modifications.

## V. The FAA did not violate the Clean Air Act's conformity determination requirement because the proposed action is categorically de minimis

**[8]** The Clean Air Act (CAA) requires that federal projects "conform" to emissions limits on six criteria pollutants established in the State Implementation Plan (SIP). 42 U.S.C. § 7506(c)(1). A federal agency must conduct a "conformity determination" analysis for each criteria pollutant where the proposed federal action would cause the total of direct and indirect emissions of the pollutant in a nonattainment or maintenance area to equal or exceed certain rates. 40 C.F.R. § 93.153(b). The agency is exempt from the conformity determination, however, if, *inter alia*, an analysis ("applicability analysis") demonstrates that the total emissions from a proposed project are below the emissions levels specified in 40 C.F.R. § 93.153(b), or if the proposed action "would result in no emissions increase or an increase in emissions that is clearly de minimis," 40 C.F.R. § 93.153(c)(2). The FAA argues that changes in departure paths are considered categorically de minimis under 40 C.F.R. § 93.153(c)(2) and thus no conformity determination or applicability analysis is required.

**[9]** The provisions in 40 C.F.R. § 93.153(c)(2) and the equivalent provisions in 40 C.F.R. § 51.853(c)(2) set forth a list of actions that would not result in an emissions increase above the de minimis level and therefore would not require a conformity analysis. The modification of the flight path at issue in this petition does not fall under any of the enumerated exceptions. It is not clear from the regulations, however, whether the list was intended to be exclusive or illustrative.

**[10]** When a regulation is ambiguous, we consult the preamble of the final rule as evidence of context or intent of the

agency promulgating the regulations. *See El Comite para el Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1070-71 (9th Cir. 2008). Here, the preamble could not be any clearer that the Environmental Protection Agency (EPA) intended the list of de minimis actions to be illustrative, not exclusive. The preamble states:

> In order to illustrate and clarify that the de minimis levels exempt certain types of Federal actions, several de minimis exemptions are listed in § 51.853(c)(2). There are too many Federal actions that are de minimis to completely list in either the rule or this preamble.

Determining Conformity of General Federal Actions to State or Federal Implementation Plans, 58 Fed. Reg. 63214-01, 63229 (Nov. 30, 1993). Furthermore, the preamble clearly states that the EPA considered the type of modification in departure paths undertaken by the FAA in this case as categorically de minimis:

> In addition to the list in the rule, the EPA believes that the following actions are illustrative of de minimis actions:
>
> . . . .
>
> (2) Air traffic control activities and adopting approach, departure and enroute procedures for air operations.

*Id.* The FAA was entitled to rely on this clear evidence of intent to conclude that the proposed action was categorically de minimis and did not necessitate a conformity determination or applicability analysis.

Petitioners' arguments to the contrary are not persuasive. For example, petitioners ask us to take judicial notice of the

New York/New Jersey/Philadelphia Metropolitan Area Airspace Redesign Environmental Impact Statement (EIS), issued on July 30, 2007, and refer us to a sentence in the document that states that the FAA was advised by the EPA not to rely on the Preamble to the final rule to conclude that air traffic control activities were de minimis. Even if this EIS — which was issued after the FONSI/ROD in this case — were a proper subject of judicial notice in conducting administrative review, this sentence does not tell us how or when the FAA was advised by the EPA of the alleged change in its position. We cannot tell from this piece of evidence what weight to give this advice.

Petitioners also argue that the EPA has proposed a rule that adds to the list of de minimis actions under 40 C.F.R. § 93.153(c)(2)(xxii) a category for "[a]ir traffic control activities and adopting approach, departure and enroute procedures for aircraft operations *above 3,000 feet above ground level*." Proposed Rules, Revisions to the General Conformity Regulations, 73 Fed. Reg. 1402-01 (Jan. 8, 2008) (emphasis added). Petitioners thus contend that air traffic procedures below 3,000 feet above ground level are not categorically de minimis. The proposed rule, however, has not been finalized. The EPA may, of course, in the future clarify what actions are considered categorically de minimis for purposes of the conformity analysis.

**[11]** We therefore conclude that the FAA did not need to conduct a full conformity determination under the CAA, or an applicability analysis, because its proposed action was categorically de minimis. Because we resolve FAA's compliance with the CAA on the ground that the proposed action was categorically exempt, we do not reach the petitioners' objections to the air quality applicability analysis, which the FAA performed in excess of its obligations under the CAA.

## VI.    Conclusion

**[12]** For the reasons stated above, we conclude that the FAA did not act arbitrarily or capriciously by issuing a

FONSI/ROD that approves the northern turn from the Las Vegas McCarran Airport. We grant the petitioners' request for judicial notice of Federal Register Notices. We do not consider the requests for judicial notice that are not referred to in this opinion, nor do we consider the FAA's Motion to Supplement to the Certified Index to the Administrative Record with Document 328 because none of the materials are necessary for resolving the issues that we reach.

PETITION FOR REVIEW IS DENIED.