**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAMARIO RASHEED STERLING,
individually and on behalf of all
others similarly situated,

*Plaintiff - Appellant*,

v.

CAMI L. FEEK, Commissioner,
Washington State Employment
Security Department, in her individual
and official capacities; SUZAN G.
LEVINE, Former Commissioner,
Washington State Employment
Security Department, in her individual
capacity,

*Defendants - Appellees*.

No. 24-1296

D.C. No.
3:22-cv-05250-
DGE

OPINION

Appeal from the United States District Court
for the Western District of Washington
David G. Estudillo, District Judge, Presiding

Argued and Submitted February 6, 2025
Portland, Oregon

Filed September 4, 2025

Before: Carlos T. Bea, Lucy H. Koh, and Jennifer Sung,
Circuit Judges.

Opinion by Judge Sung

## SUMMARY[*]

### Pandemic Emergency Unemployment Compensation Benefits

In an interlocutory appeal, the panel reversed the district court's determination that plaintiff had no constitutionally-protected property interest in federal Pandemic Emergency Unemployment Compensation (PEUC) benefits, and remanded.

Damario Sterling filed a putative class action under 42 U.S.C. § 1983 against the current and former commissioner of the Washington State Employment Security Department (ESD), alleging that he was deprived of unemployment benefits without adequate notice or an opportunity to be heard.

The panel first held that Sterling's claims are justiciable. He has standing to seek damages because he was injured when ESD offset his benefits to account for alleged overpayments, and that injury was caused by ESD's challenged conduct. He has standing to seek prospective injunctive relief because he has a procedural right to due

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

process under the Fourteenth Amendment and the Social Security Act, and he could reasonably be expected to seek unemployment benefits again in the future. His claims for prospective relief were not mooted by the end of the PEUC program because he challenges the procedures ESD generally uses to administer unemployment benefits, not any procedures specific to PEUC benefits.

The panel held that Sterling has a property interest in the PEUC benefits that ESD withheld as offsets. The CARES Act, which established a supplemental program to extend unemployment benefits during the COVID-19 pandemic, gives rise to a constitutionally-protected property interest. The Act uses mandatory language and establishes definite eligibility criteria that greatly narrow the discretion of participating states and create legitimate expectations of aid receipt.

The panel declined to reach defendants' due process argument, which was not certified for interlocutory review.

## COUNSEL

Jillian M. Cutler (argued), Jack N. Miller, and Marc C. Cote, Frank Freed Subit & Thomas LLP, Seattle, Washington; Walter M. Smith and Steve E. Dietrich, Smith & Dietrich Law Offices PLLC, Olympia, Washington; for Plaintiff-Appellant.

Marsha J. Chien (argued), Deputy Solicitor General; Robert W. Ferguson, Attorney General; Office of the Washington Attorney General, Olympia, Washington; Timothy G. Leyh, Randall T. Thomsen, Ariel A. Martinez, and Erica R. Iverson, Special Assistant Attorneys General; Bryan Cave Leighton Paisner LLP, Seattle, Washington; for Defendants-Appellees.

Daniel F. Johnson, Breskin Johnson & Townsend PLLC, Seattle, Washington; Rory B. O'Sullivan, Washington Employment Benefits Advocates PLLC, Seattle, Washington; for Amicus Curiae Washington Employment Lawyers Association.

Anne L. Paxton, Unemployment Law Project, Seattle, Washington, for Amici Curiae Unemployment Law Project, Oregon Law Center, and National Employment Law Project.

# OPINION

SUNG, Circuit Judge:

This interlocutory appeal arises from a putative class action against Defendants Cami Feek and Suzan LeVine, the current and former commissioner, respectively, of the Washington State Employment Security Department (ESD). Plaintiff Damario Sterling filed suit under 42 U.S.C. § 1983, alleging that Defendants unlawfully deprived him and other unemployed workers of their property interests in unemployment benefits, including (1) benefits the State provided under the Washington Employment Security Act, WASH. REV. CODE § 50.01, *et seq*., and (2) supplemental benefits funded by the federal Pandemic Emergency Unemployment Compensation (PEUC) program. Sterling alleges that those deprivations occurred without adequate notice or opportunity to be heard in violation of the Fourteenth Amendment's Due Process Clause and the Social Security Act's fair hearing requirement, 42 U.S.C. § 503(a)(3).

Below, Defendants moved for summary judgment. The parties agreed that, for Sterling to prevail on his constitutional and statutory claims, he must have a property interest in the unemployment benefits. Further, the State conceded that Sterling has a property interest in benefits provided under Washington's Employment Security Act. The State, however, contended that Sterling had no property interest in PEUC-funded benefits. The district court agreed with Defendants on that issue. Although the district court denied Defendants' motion on other grounds, it granted Sterling's motion requesting that the district court certify an interlocutory appeal on the question of whether there is a

constitutionally-protected property interest in PEUC benefits. A motions panel granted Sterling's petition for permission to appeal. For the reasons below, we conclude that Sterling had a protected property interest in the supplemental PEUC-funded unemployment benefits, and we reverse and remand.

## I.  BACKGROUND

### A.  Statutory Background

Washington's regular unemployment benefits program is part of a federal-state cooperative program. WASH. REV. CODE Ch. 50.16, § 50.12.180; 42 U.S.C. §§ 501–03. In operating and administering the program, ESD must comply with certain federal requirements. *See* 42 U.S.C. §§ 501–03. The Social Security Act requires, for example, that participating states employ administrative methods "reasonably calculated to insure full payment of unemployment compensation when due" and provide the "[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied." *Id.* § 503(a)(1), (a)(3). Washington's Employment Security Act and its implementing regulations codify under state law the State's obligation to provide unemployment benefits to individuals consistent with the requirements of the Social Security Act. WASH. REV. CODE § 50.01, *et seq*.; *see also* WASH. ADMIN. CODE § 192-10, *et seq*.

Washington law entitles eligible individuals to receive up to 26 weeks of unemployment benefits per year. WASH. REV. CODE § 50.20.120. If an individual receives more benefits than they were entitled to receive, ESD may assess an overpayment. *See* WASH. ADMIN. CODE § 192-220-015. Once the agency does so, it may deduct offsets from future

unemployment benefits to recoup the assessed overpayment. *See* WASH. REV. CODE § 50.20.190(1). Before offsetting any benefits, however, ESD must notify the individual of the overpayment assessment and explain its reasons for the assessment. *Id.* The individual may then appeal any element of the assessment. *Id.* § 50.20.190(3); WASH. ADMIN. CODE § 192-220-060.

In response to widespread unemployment during the COVID-19 pandemic, Congress enacted the CARES Act, which established a supplemental federal-state cooperative program to extend unemployment benefits. *See* CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (codified at 15 U.S.C. §§ 9001–132). Relevant to this appeal, the Act created the PEUC program, which provided additional weeks of unemployment benefits for individuals who had exhausted their regular unemployment benefits under state and federal law. 15 U.S.C. §§ 9021, 9025. The program expired in September 2021. *Id.* § 9025(g)(2).

Under the CARES Act, State participation in the supplemental PEUC program was optional. And, if a state opted in, it retained discretion to end its participation. 15 U.S.C. § 9025(a)(1). If a state chose to participate in the PEUC program, however, the CARES Act required the state to agree to "make payments of pandemic emergency unemployment compensation to individuals who": (1) "have exhausted all rights to regular compensation under the State law or under Federal law with respect to a benefit year"; (2) "have no rights to regular compensation with respect to a week under such law or any other State unemployment compensation law or to compensation under any other Federal law"; (3) "are not receiving [Canadian unemployment] compensation"; and (4) "are able to work,

available to work, and actively seeking work." *Id.* § 9025(a)(2)(A)–(D).

The Act also required participating states to pay benefits according to a specific formula. *See id.* § 9025(a)(4)(A). The Act specified that the amount "payable to any individual for any week" was: (1) the amount of his regular unemployment benefits payable "under the State law for a week of total unemployment"; (2) the amount of his federal pandemic unemployment compensation benefits; and (3) the amount, if any, of his mixed earner unemployment compensation. *Id.* § 9025(a)(4)(A)(i)–(iii). The Act further mandated that the "conditions of the State law which apply" to regular unemployment benefits also apply to PEUC benefits, "including terms and conditions relating to availability for work, active search for work, and refusal to accept work." *Id.* § 9025(a)(4)(B).

Finally, the Act required participating states to accomplish any recovery for overpayment of PEUC benefits through deductions from either PEUC or regular unemployment benefits "in accordance with the same procedures as apply to the recovery of overpayments of regular unemployment benefits paid by the State." *Id.* § 9025(e)(3)(A). And the Act made any overpayment determination by a state agency "subject to review in the same manner and to the same extent as determinations under the State unemployment compensation law." *Id.* § 9025(e)(4).

## B.  Administrative Background

In early 2020, Sterling lost his job as a professional restorer due to the COVID-19 pandemic, and he applied for unemployment benefits. ESD approved Sterling's application in March 2020 and awarded him $551 in weekly

benefits. In September 2020, ESD informed Sterling that he had exhausted all regular unemployment benefits but could apply for additional benefits funded by the PEUC program. Sterling applied, and ESD approved his application. The agency again awarded him $551 per week.

In January 2021, ESD audited the payroll records of Sterling's former employer. The agency determined that his employer had misreported sick pay as wages and failed to report certain other wages. As a result of this audit, ESD redetermined Sterling's weekly benefits and reduced his award from $551 to $538 per week.

Between January 29 and February 11, 2021, ESD sent Sterling six different notices about the redetermination, which asserted two different overpayment amounts and provided four different deadlines for Sterling to appeal or respond.

ESD sent four of those notices on January 29. The first stated that ESD had overpaid Sterling by $52 in March and April 2020 and informed him that he could appeal that determination by March 1. The second said that Sterling "may receive up to $538 each week" and gave Sterling until March 29 to appeal. The third told Sterling that ESD "previously denied your benefits based on the information we had at that time," and that "[t]his decision replaces the earlier one." It asserted that Sterling "might owe [ESD] $7332[] as a result of this decision," indicated ESD had overpaid Sterling between September and December of 2020, and gave a deadline of March 1 to appeal. The final notice that ESD sent on January 29 was a web notice informing Sterling that he must provide ESD certain information by February 8.

The next day, January 30, ESD sent Sterling an overpayment waiver and instructed him that he must respond by February 8. On February 11, ESD informed Sterling that "[w]e denied your unemployment benefits starting Mar[ch] 15 2020 until the reason for our decision no longer exists," that he "must pay back $7332," and that he had until March 15 to appeal.

In February 2021, Sterling filed an appeal with ESD. While that appeal was pending, ESD began reducing Sterling's ongoing benefits to offset the disputed overpayment assessments.

In August 2021, an administrative law judge (ALJ) decided Sterling's appeal. The ALJ found that ESD's letters: (1) failed to "provide adequate notice to the claimant the reasons why benefits were denied or the claim reevaluated"; (2) failed to "inform the parties about the facts that led up to the Department's determination" or "the statute or regulation on which it based its decision"; and (3) failed to provide "adequate notice of the basis for the Department's decision to deny, reduce, or reevaluate benefits." Accordingly, the ALJ concluded that Sterling was neither "subject to a denial of benefits" nor "liable for an overpayment of benefits." The ALJ remanded the matter to ESD to issue a new redetermination letter.

By the time of the ALJ's order, ESD had offset at least $6,994 of Sterling's ongoing PEUC benefits.[1] After the ALJ's order, the agency reimbursed Sterling the amounts it had offset. ESD's online system, the Unemployment Tax and Benefits Program (UTAB), continues to indicate that

---

[1] As the district court noted, Defendants describe the precise amount offset as both $6,994 and $6,995.

Sterling owes ESD $339. That $339 is the remaining amount that ESD determined Sterling owed for the alleged overpayments but had not yet offset at the time of the ALJ's order. [2]

Sterling stopped receiving unemployment benefits in September 2021.

## C. Procedural History

In April 2022, Sterling and other claimants filed this putative class action against Commissioner Feek, later adding former Commissioner LeVine to the suit. Following the dismissal of the other named plaintiffs, Sterling remains the only named plaintiff.

The operative Second Amended Complaint (SAC) alleges that Defendants deprived Sterling and other unemployed workers of their property interests in regular and PEUC-funded unemployment benefits in violation of the Due Process Clause of the Fourteenth Amendment and the fair hearing requirement of the Social Security Act. The SAC states that ESD sent Plaintiffs "confusing, untimely, and threatening overpayment notices stating that they owed thousands of dollars to the government." It further alleges that ESD routinely failed to provide "adequate prior notice or opportunity to be heard" before redetermining benefits and assessing overpayments.

The SAC seeks damages, injunctive relief, and declaratory relief. It alleges that Plaintiffs "suffered damages when they were subject to offset of their continuing claims for unemployment benefit and/or . . . required to repay

---

[2] ESD represents that it would have credited Sterling's account for the balance owed but instead placed a "hold" on his account because of this litigation.

amounts to ESD that arose from untimely or deficient overpayment determinations like that issued to . . . Sterling." The SAC further states that "ESD will likely continue to provide Plaintiffs . . . with untimely overpayment assessments and/or overpayment assessments lacking factual and legal explanations for the liability, and will cause claimants to suffer losses through offsets or other collections of their property regardless of whether they file a timely appeal." As a result, the SAC alleges, "Plaintiffs will continue to suffer irreparable injury until Defendants' unlawful and/or unconstitutional actions are enjoined and declared to be unlawful and/or unconstitutional."

After the district court determined that the Social Security Act claim was governed by the "same standards applicable to constitutional due process," Defendants moved for summary judgment on the claims of Sterling, the only remaining plaintiff. They conceded that Sterling had a constitutionally-protected property interest in his regular unemployment benefits. But they asserted Sterling's claims still fail as a matter of law based on two arguments: (1) there is no constitutionally-protected property interest in PEUC benefits; and (2) even if otherwise, Sterling received adequate due process. Sterling opposed the motion on both grounds.

The district court agreed with Defendants' first argument: it concluded that although regular unemployment benefits give rise to a protected property interest, PEUC benefits do not because "the PEUC program may be terminated at the discretion of the States receiving them." The court therefore held that Sterling's claims failed to the extent they were "based on funds distributed under the PEUC program."

However, the district court still denied Defendants' motion for summary judgment because it found a genuine factual dispute regarding whether the offsets at issue related to Sterling's PEUC-funded or regular unemployment benefits, and viewing the record in the light most favorable to Plaintiff, the offsets included some regular state benefits. Because "even a temporary deprivation of Sterling's regular unemployment benefits constituted a deprivation of a constitutionally-protected property interest," and there was also a genuine factual dispute regarding whether Sterling received adequate due process before the State offset his benefits, the district court concluded that Defendants were not entitled to summary judgment on Sterling's claims as a matter of law.

Sterling moved for reconsideration of the district court's ruling that he did not have a property interest in PEUC benefits and, in the alternative, requested certification for interlocutory appeal. Defendants sought reconsideration of the district court's finding that ESD may have offset Sterling's regular employment benefits. The district court denied both motions for reconsideration, but it certified for interlocutory appeal the question of whether there is a constitutionally-protected property interest in PEUC benefits. A motions panel then granted Sterling's petition for permission to appeal.

## II. JURISDICTION

### A. Article III Jurisdiction

Article III of the United States Constitution confers limited authority on federal courts to hear only active cases or controversies brought by plaintiffs who demonstrate standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016). We have an "independent obligation" to ensure that

a case falls within our Article III jurisdiction by confirming that standing exists and that the issues presented are not moot. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *In re Burrell*, 415 F.3d 994, 997 (9th Cir. 2005). Accordingly, we exercise our discretion to address Defendants' uncertified argument that Sterling's claims are nonjusticiable either because he lacks standing or because his claims are mooted by the end of the PEUC program.

### i.  Standing

"The irreducible constitutional minimum of [Article III] standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing standing as to each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Here, Sterling seeks both damages and prospective relief.

Sterling has standing to seek damages. Defendants do not seriously contend otherwise. It is undisputed that Sterling was injured when ESD offset his benefits to account for alleged overpayments, and that injury was caused by ESD's challenged conduct. Sterling seeks actual, exemplary, and nominal damages.

We next consider Sterling's standing to bring claims for injunctive and declaratory relief. We analyze standing as to those claims together because "a plaintiff [who] has standing to seek injunctive relief . . . also has standing to seek a declaratory judgment." *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 62 (9th Cir. 2024) (quoting *Clark v. City of*

*Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001), *as amended* (Aug. 15, 2001)).

Defendants contest Sterling's standing to seek prospective relief on two grounds. We begin with the more technical argument. Defendants assert that ESD only ever applied offsets to Sterling's *PEUC* benefits and Sterling therefore lacks standing to seek prospective relief related to ESD's procedures for administering *regular* unemployment benefits. In their view, even if the alleged overpayments stemmed from ESD's payments of regular employment benefits to Sterling, Defendants couldn't have possibly deprived Sterling of his interest in his regular employment benefits because they only ever made deductions to his PEUC benefits. We are unconvinced that this distinction matters. If ESD deprived Sterling of money that he would have otherwise received to recover alleged overpayments of regular unemployment benefits, the effect was to deprive Sterling of his regular unemployment benefits.

In any case, Sterling challenges ESD's procedures for redetermining and offsetting unemployment benefits— procedures that ESD used for both regular and PEUC benefits. Moreover, Defendants do not dispute that ESD continues to use these same procedures for regular unemployment benefits, even after the PEUC program ended. The injury is the same whether ESD redetermines, reduces, or applies offsets against PEUC or regular unemployment benefits. *See Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001) *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005) (holding that plaintiffs who were injured by parole board policy of failing to accommodate disabilities "all established the same injury," even though plaintiffs suffered from different disabilities and required different

accommodations). Accordingly, we are not persuaded that the disputed factual issue of whether ESD offset Sterling's PEUC benefits or regular unemployment benefits affects Sterling's standing to seek prospective relief from ESD's procedures for redetermining and offsetting unemployment benefits.

We turn to Defendants' argument that Sterling lacks standing to seek prospective relief because he is no longer receiving unemployment benefits. To establish standing for prospective relief, Sterling must show there is a "sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). To meet this requirement, a plaintiff generally must show that the threat of injury is "actual and imminent, not conjectural or hypothetical." *Earth Island Inst.*, 555 U.S. at 493. Where, as here, the plaintiff was injured by an alleged violation that occurred in the past, he must demonstrate that he is realistically threatened by a repetition of the violation. Still, he need not show that the likelihood of repetition is "high." *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012). He can meet this requirement, for example, by "demonstrat[ing] that the harm is part of a pattern of officially sanctioned behavior, violative of the plaintiff['s] federal rights." *Armstrong*, 275 F.3d at 861 (cleaned up).

Further, a plaintiff seeking injunctive relief for a procedural injury is held to a "less demanding standard." *Ochoa v. Pub. Consulting Grp.*, 48 F.4th 1102, 1107 (9th Cir. 2022). "The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan*, 504 U.S. at 572 n.7. A plaintiff establishes "procedural standing" by showing that he was accorded a procedural right to protect his interests, and that

he has concrete interests that are threatened. *Ochoa*, 48 F.4th at 1107.

Sterling has a "procedural right to due process" under the Fourteenth Amendment and 42 U.S.C. § 503. *See id.* That right protects a concrete interest—Sterling's interest in receiving unemployment benefits for which he qualifies under state and federal law. And the record supports the conclusion that his concrete interest is "threatened." *Id.* (quoting *City of Las Vegas v. F.A.A.*, 570 F.3d 1109, 1114 (9th Cir. 2009)). Defendants' own records show that Sterling has filed claims for state unemployment benefits at least three times. Consequently, Sterling can reasonably be expected to seek unemployment benefits again in the future. Additionally, Defendants do not dispute that Sterling's injury stems from Defendants' ongoing practices. Under these circumstances, the risk is "'sufficiently real' to meet the low threshold required to establish procedural standing." *Id.* (quoting *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 446 (9th Cir. 1994)) (holding plaintiff had standing to seek prospective relief from alleged procedural due process violations even though her claimed "future harms [we]re speculative").

### ii. Mootness

"A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation marks omitted). "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry P.

Monaghan, *Constitutional Adjudication: The Who and When*, 82 YALE L.J. 1363, 1384 (1973)). But mootness is more complex than simply "standing set in a time frame," because it is more flexible and has exceptions that do not apply to standing. *Laidlaw*, 528 U.S. at 189–92; *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012).

Defendants assert that Sterling's claims for prospective relief are rendered moot by the expiration of the PEUC program. But Sterling seeks prospective relief addressing ESD's procedures for denying, assessing overpayments on, and reducing awards of unemployment benefits—procedures that ESD continues to use even though the PEUC program has ended. Because he challenges the procedures ESD generally uses to administer unemployment benefits—not any procedures specific to PEUC benefits—his prospective relief claims are not mooted by the end of the PEUC program.

In sum, we have Article III jurisdiction over Sterling's claims.

## B. § 1292(b) Jurisdiction

A non-final order may be certified for interlocutory appeal where there is "a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Although we give deference to the ruling of the motions panel, we have an independent duty to confirm that jurisdiction is proper. *See Kuehner v. Dickinson & Co.*, 84 F.3d 316, 318–19 (9th Cir. 1996). Further, "even when this court has interlocutory jurisdiction, it is free to decline to hear some or all the issues the parties raise on appeal." *ICTSI*

*Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022).

Whether there is a constitutionally-protected property interest in PEUC benefits presents a question of law that materially affects the outcome of this litigation. As the district court recognized, we have not previously considered the issue presented: when a state opts into a federal-state benefit program but retains discretion to withdraw, whether that discretion negates eligible recipients' property interest in the benefits. We also agree with the district court that "fair-minded jurists might reach contradictory conclusions" on this "novel legal issue[]." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Reviewing the question at this juncture would also resolve an issue fundamental to Sterling's individual claims and clarify which putative class members are eligible for relief. Because "resolution of the question may appreciably shorten the time, effort, or expense of conducting the district court proceedings," interlocutory review materially advances the litigation. *ICTSI Oregon*, 22 F.4th at 1131 (quotation marks and citation omitted). Accordingly, we have jurisdiction under § 1292(b) to review the certified question, and interlocutory review is appropriate.

## III.  PROPERTY INTEREST IN PEUC BENEFITS

The certified question is whether Sterling has a property interest in the PEUC benefits that ESD withheld as offsets. Although the parties agree that Washington's participation in the PEUC program was optional, they dispute whether the State's choice to participate in the program, under the terms imposed on their participation by federal law and contract, created a property interest for Sterling in receiving PEUC

benefits. That is a question of law, which we review de novo. *See Krug v. Lutz*, 329 F.3d 692, 695 (9th Cir. 2003).

As noted, the district court concluded that Sterling had no property interest in PEUC benefits because the CARES Act allowed the State to end its participation, and thus Sterling's PEUC benefits, at its discretion. Sterling argues that the CARES Act nonetheless gave rise to a property interest because it required every state that opted to participate in the PEUC program, including Washington, to abide by various conditions that created benefit entitlements for the duration of the state's participation in the program. For the reasons below, we agree with Sterling that he had a protected property interest in PEUC benefits.

### A. Statutes mandating the award of government benefits based on objective eligibility criteria create property interests.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). Property interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*. at 577. A person has a protected property interest in a government benefit when the individual seeking the benefit has "a legitimate claim of entitlement to it." *Id.* A legitimate claim of entitlement exists when there are conditions under which a benefit must be granted or there are limited conditions under

which the benefit can be denied. *See, e.g.*, *Armstrong v. Reynolds*, 22 F.4th 1058, 1068 (9th Cir. 2022) ("[A] law establishes a property interest in employment if it restricts the grounds on which an employee may be discharged."); *Doyle v. City of Medford*, 606 F.3d 667, 673 (9th Cir. 2010) ("[A] statute must contain particularized standards or criteria to create a property interest." (quotation marks omitted)). In contrast, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

Property interests can be conferred in many ways, including by "statute, regulation, contract, or established practice." *Reynolds*, 22 F.4th at 1067; *accord. Perry v. Sindermann*, 408 U.S. 593, 601 (1972) ("'[P]roperty' interests subject to procedural due process protection are not limited by a few rigid, technical forms."). If a statute, regulation, or contract uses "mandatory language" that requires the government to provide benefits based on "specific objective eligibility criteria," the resulting entitlement is constitutionally protected. *Griffeth v. Detrich*, 603 F.2d 118, 121 (9th Cir. 1979); *see also, e.g.*, *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998) ("The Ninth Circuit has long held that applicants have a property interest protectible under the Due Process Clause where the regulations establishing entitlement to the benefit are, as here, mandatory in nature."); *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 63 (9th Cir. 1994) (A statute that "significantly constrain[s] the discretion" of the awarding official creates an "'articulable standard' sufficient to give rise to a legitimate claim of entitlement." (citation omitted)); *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980) ("A property interest may be created if 'procedural'

requirements are intended to operate as a significant substantive restriction on the basis for an agency's actions.").

Although we have not previously considered whether unemployment benefits are constitutionally protected, other circuits have consistently held that eligible unemployed workers have a property interest in unemployment benefits funded by the federal government and administered by the states. *See, e.g.*, *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 900 (6th Cir. 2019) ("Recipients of unemployment compensation have constitutionally-protected property interests in unemployment benefits."); *Berg v. Shearer*, 755 F.2d 1343, 1345 (8th Cir. 1985) ("Unemployment benefits are a property interest protected by the due process requirements of the fourteenth amendment."); *Ross v. Horn*, 598 F.2d 1312, 1317 (3d Cir. 1979) ("[A]ppellants certainly have a property right in receiving unemployment benefits to which they are entitled by statute."). We see no basis for disagreeing with our sister circuits, and Defendants offer none. To the contrary, Defendants concede that the State's longstanding unemployment benefits program creates a property interest in "regular" unemployment benefits. Defendants contend only that there is no protected property interest in the supplemental PEUC unemployment benefits. We disagree.

## B. The CARES Act mandates the award of PEUC benefits based on objective eligibility criteria.

The CARES Act "significantly constrain[s] the discretion" of state agencies in administering PEUC benefits. *Wedges/Ledges*, 24 F.3d at 63. By participating in the PEUC program, Washington State contractually bound itself to the provisions of the CARES Act. *See* 15 U.S.C.

§ 9025(a)(1)–(2). The Act uses "mandatory language" that requires participating states to award PEUC benefits to individuals who meet "specific objective eligibility criteria." *Griffeth*, 603 F.2d at 121.

For example, the Act mandates that any state's agreement to participate in the PEUC program "*shall* provide that the State agency of the State *will* make payments of pandemic emergency unemployment compensation to individuals who" satisfy certain requirements. 15 U.S.C. § 9025(a)(2) (emphasis added). Those requirements, in turn, are "objective" and "carefully circumscribed." *Foss*, 161 F.3d 587–88. The Act requires a state to pay benefits to individuals who: (1) "have exhausted all rights to regular compensation under the State law or under Federal law with respect to a benefit year"; (2) "have no rights to regular compensation with respect to a week under such law or any other State unemployment compensation law or to compensation under any other Federal law"; (3) "are not receiving [Canadian unemployment] compensation"; and (4) "are able to work, available to work, and actively seeking work." *Id.* § 9025(a)(2)(A)–(D).

The Act specifies a mandatory formula to calculate those payments. The amount of PEUC benefits "payable to any individual for any week of total unemployment *shall* be equal to": (1) the amount of his regular unemployment benefits payable "under the State law for a week of total unemployment"; (2) the amount of his federal pandemic unemployment compensation benefits; and (3) the amount, if any, of his mixed earner unemployment compensation. *Id.* § 9025(a)(4)(A)(i)–(iii) (emphasis added).

The Act also constrains the ability of states to recover overpayments. It provides: "No repayment shall be required, and no deduction shall be made, until a determination has been made, notice thereof and an opportunity for a fair hearing has been given to the individual, and the determination has become final." *Id.* § 9025(e)(3)(B). The Act further provides: "Any determination by a State agency under this section *shall* be subject to review in the same manner and to the same extent as determinations under the State unemployment compensation law, and only in that manner and to that extent." *Id.* § 9025(e)(4) (emphasis added).

Finally, although states may terminate their participation in the PEUC program, they may only do so "upon providing 30 days' written notice to the Secretary." *Id.* § 9025(a)(1). In other words, even if ESD had terminated its participation in the program (which it did not), it still would have been obligated to pay PEUC benefits for 30 days after sending its termination notice.

Because the CARES Act uses "mandatory language" and establishes "definite eligibility criteria" that "greatly narrow the discretion of [participating states]" and "create legitimate expectancies of aid receipt," we conclude that unemployment benefits funded by the PEUC program give rise to a constitutionally-protected property interest. *Griffeth*, 603 F.2d at 122.

### C.  Defendants wrongly focus on the discretion to participate in the PEUC program rather than the discretion to award benefits.

Benefits provided by federal-state cooperative programs can create property interests even where state participation in the program is voluntary. For example, the Supreme Court

has recognized that qualified individuals have a property interest in receiving food stamps, even though state participation in the food stamp program was (and continues to be) voluntary. *Atkins v. Parker*, 472 U.S. 115, 128 (1985); 7 U.S.C. § 2013 (1977). Likewise, we have held that individuals who were the primary intended beneficiaries of the Section 8 housing program had a protected property interest in Section 8 benefits, even though housing owners' participation in the program was voluntary. *Ressler v. Pierce*, 692 F.2d 1212, 1215–16, 1222 (9th Cir. 1982). And the Eighth Circuit recognized that the Medicaid Act creates a constitutionally protected property interest for qualifying individuals, even though state "participation in Medicaid is voluntary, [because] states that choose to participate must comply with the requirements for state plans." *Pediatric Specialty Care, Inc. v. Ark. Dep't of Hum. Servs.*, 364 F.3d 925, 928 n.2, 930 (8th Cir. 2004).

Accordingly, the relevant inquiry is not whether states have discretion to *participate* in the PEUC program, but rather whether states have "open-ended discretion[]" to *award* PEUC benefits. *Wedges/Ledges*, 24 F.3d at 63; *see also Groten v. California*, 251 F.3d 844, 850 (9th Cir. 2001) (real estate appraiser had protected property interest in reciprocal license despite state's ability to terminate underlying reciprocal agreement because state statute "significantly restrict[ed] the discretion" of the awarding agency).

As explained above, Washington did not have open-ended discretion to award and recoup PEUC benefits. Notwithstanding the Act's mandatory provisions and objective criteria, Defendants argue that beneficiaries have no property interest because the Act "granted Washington unlimited discretion to decide whether to participate in the

PEUC program and expressly granted Washington unilateral authority to withdraw." Defendants offer no controlling authority for the proposition that a state's discretion to decide whether to participate in a benefit program precludes the creation of any property interest in the benefits administered under the program. Instead, like the district court, Defendants rely solely on unpublished, out-of-circuit district court decisions. Those cases, and Defendants' position, cannot be reconciled with the longstanding precedents regarding comparable benefit programs discussed above. Intended beneficiaries, including Sterling, have a constitutionally-protected property interest in PEUC benefits, and we reverse the district court's contrary ruling.

Finally, we address Defendants' argument that the PEUC program did not create a constitutionally-protected property interest because it provided "a temporary benefit on an emergency basis." The "temporary" and "emergency" nature of the PEUC program does not negate the fact that beneficiaries had a legitimate claim of entitlement to the PEUC benefits for the duration of the state's participation in that program. Because the CARES Act required the state to administer the PEUC-funded benefits under the same "terms and conditions" as "apply to claims for regular [unemployment] compensation" throughout the state's participation in the PEUC program, 15 U.S.C. § 9025(a)(4)(B), Defendants' discretion in administering the PEUC benefits, like their discretion in administering regular unemployment benefits, was "significantly constrain[ed]," *Wedges/Ledges*, 24 F.3d at 63. The State's participation in the PEUC program therefore gave rise to a protected property interest for eligible individuals like Sterling.

## IV.   DUE PROCESS

Defendants ask that we reach beyond the discrete, certified question of law and "direct the district court to enter summary judgment in [their] favor" because, in their view, ESD provided Sterling with adequate due process. We decline to do so.

"[I]n seeking interlocutory review of issues not certified," an appellee is "well-advised" to file a cross-petition under Federal Rule of Appellate Procedure 5(b)(2). *Reese*, 643 F.3d at 689. Defendants did not do so here. Their "failure to do so and election to raise an issue only in [their] answering brief disadvantages [Sterling], who [was] unable to anticipate presciently and to address adequately the issue in [his] opening brief." *Id.* The absence of a Rule 5(b)(2) cross-petition in such circumstances also "risks offending the party presentation principle." *Id.* at 689–90; *see also Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 49–50 (1995) ("[L]oosely allowing pendent appellate jurisdiction would encourage parties to parlay" interlocutory orders into "multi-issue interlocutory appeal tickets.").

Further, Defendants do not argue that the question of whether Sterling received due process "would independently merit interlocutory review." *Reese*, 643 F.3d at 689. Indeed, Defendants' actions below indicate that it would not: When Defendants moved for reconsideration of the district court's order denying their summary judgment motion, they did not ask the district court to revisit its conclusion that, "[i]n weighing the *Matthews* factors, and when viewing the facts in the light most favorable to Sterling, . . . Defendants have failed to establish they are entitled to dismissal of [Sterling's due process claim] as a matter of law." "That [Defendants] did not find the district court's alleged error on th[is] ruling[]

so plain as to seek reconsideration counsels against our reviewing [it] on interlocutory appeal." *Reese*, 643 F.3d at 689. We therefore decline to reach this uncertified issue.

## CONCLUSION

For these reasons, we conclude that Sterling's claims are justiciable. We review and reverse the district court's ruling that Sterling had no constitutionally-protected property interest in the PEUC benefits. We decline to reach Defendants' uncertified due process argument.

**REVERSED AND REMANDED.**